IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KIRK HORSHAW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:14-cv-248-NJR-DGW |
| ) | |
| LT. MAYO, SGT CASPER, MICHAEL ) | |
| ATCHISON, MORGAN TEAS, and EDDIE ) | |
| RUMPH, ) | |
| ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a). For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment on the Issue of Exhaustion filed by Defendants on February 6, 2015 (Doc. 55) be **DENIED** and that the Court adopt the following findings of fact and conclusions of law.

INTRODUCTION

Plaintiff, Kirk Horshaw, who is currently incarcerated at the Stateville Correctional Center, filed a 42 U.S.C. § 1983 action related to events that occurred while he was housed at the Menard Correctional Center beginning in September 2012. Plaintiff alleges that he was threatened by another unknown inmate at Menard in September or October, 2012. He told

Defendants Mayo (Corrections Officer), Casper (Corrections Sergeant), and Atchison (then the Warden of Menard) about the threat.  Plaintiff requested assistance and protection.  On October 5, 2012, Plaintiff was attacked and beaten by other inmates in the Menard yard – he was struck with closed fists, a dumbbell weight or similar object, and stomped in the face.  At the time, Defendant Teas (Corrections Officer) and Rumph (Corrections Officer) were assigned to the yard and allegedly failed to protect Plaintiff or stop the attack despite witnessing the events leading up to the attack and being in the vicinity.

After the attack, Plaintiff was transported to Chester Memorial Hospital where he stayed for 3 weeks.  As a result of the beating, Plaintiff sustained closed head trauma, facial fractures, lacerations, and contusions, severe brain injury, physical disability, mental disability, and pain and suffering, among other things.  Plaintiff underwent significant medical procedures, for the following 5 months, including jaw reconstruction, facial reconstruction (involving plates and screws), tracheostomy, and placement of feeding tubes.  Plaintiff alleges that he "did not regain his faculties or fully return to relatively normal activities of daily living until approximately April or May 2013."  Plaintiff still suffers from pain, difficulty speaking, reading, and eating, anxiety, loss of motor skills, attention deficits and other conditions.   Plaintiff alleges a claim of failure to protect as to all Defendants.

On February 6, 2015, Defendants filed the pending Motion for Summary Judgment (Doc. 55).  Plaintiff responded on February 18, 2015 (Doc. 57) and a hearing was held on April 21, 2015 (Doc. 64).  At the hearing, Plaintiff appeared by video and two witnesses appeared, JoAnne L. Reagan and Sarah Johnson.

### FINDINGS OF FACT

It is undisputed that Plaintiff submitted a grievance on April 30, 2013 directly to the Administrative Review Board (ARB) (Doc. 56-3, p. 2-3). At the time that Plaintiff submitted his grievance, six months after the attack, Plaintiff was incarcerated at the Stateville Correctional Center (it is unclear from the record when Plaintiff was transferred). In the grievance, Plaintiff describes the attack and the injuries that he sustained. He indicates that he was unable to write out a grievance sooner because he was in a coma and had to learn to write again. He states that his watch and wedding band were taken from him during the attack and have not been returned. For relief, Plaintiff states:

> That I receive some money for my injury to take care my family. And that I get sent to a nice 'medium prison.' Because the staff failed to protect me. I almost died. I was left for dead on yard.
>
> (*Id.*).

The ARB responded on June 4, 2013 (*Id.* p. 1). In the response, the ARB rejected the grievance for 3 reasons: 1. "Personal Property issues are to be reviewed at your current facility prior to review by the Administrative Review Board;" 2. "Not submitted in the timeframe outlined in Department Rule 504; therefore, this issue will not be addressed further;" 3. "Records indicate grv filed on pp in January 2013. Address current medical issues w/ health care units" (*Id.*). The ARB did not specifically address Plaintiff's claim that he could not fill out the grievance sooner because of his medical condition; nor did the ARB address Plaintiff's failure to protect assertion. The ARB did not request any additional information, like a description of the staff that Plaintiff mentions.

At the hearing held on April 21, 2015, Plaintiff testified that he penned a letter entitled "Warden" in which he sought transfer to another institution (April 21, 2015 Hearing Transcript

(hereinafter "T"), Doc. 66, pp 7-8). The letter is undated, but other handwriting on the document indicates a date of December 28 (which the Court assumes means December 28, 2012). The other handwriting, which discusses action to be taken regarding Plaintiff's transfer, appears to be written by prison officials. Plaintiff does not remember when he wrote the letter and does not recall getting a response (*Id.*). The letter does not complain about any staff conduct.

Defendants also have presented Plaintiff's Cumulative Counseling Summary in which it is noted that Plaintiff filed an emergency grievance on January 4, 2013 that was returned to him on January 10, 2013 as not an emergency (Doc. 56-4, p. 3). There is no copy of the grievance in the record. From the Summary, Plaintiff states that he was assaulted and that he discovered that property was missing when it was returned to him (*Id.*). Plaintiff testified that he did not remember writing the grievance and that, at the time, there were two other inmates who were helping him with "things." (T. 9-10).

When Plaintiff was in the healthcare unit and during the months of January to March, 2013, Plaintiff testified that he had plates in his mouth, that it was "wired up," and that he could not talk (T. 11). After the October assault, Plaintiff could not think clearly, could not speak or write (T. 14). The first month that Plaintiff remembered after the assault was January, 2013 and the first month he began recalling the assault was March, 2013 (T. 15). Plaintiff testified that no one at Menard offered to help him write a grievance about the assault (T. 19). In the April 30, 2013 grievance, Plaintiff included all the information he remembered in addition to what others told him about the October assault (T. 17).

At the hearing on April 21, 2015, Plaintiff called Joann L. Reagan, a registered nurse, who had reviewed Plaintiff's medical records. Ms. Reagan testified as to Plaintiff's significant facial and cranial injuries in addition to brain injuries. Ms. Reagan testified that various medical

tests performed after the October assault would lead to the conclusion that Plaintiff suffered a severe brain injury (T. 41-43). Plaintiff had a total of 20 metal plates and 80 screws installed in his face in addition to various invasive procedures (T. 48-49). Upon a return to Menard (after a three-week hospital stay), he suffered respiratory failure (T. 50). Plaintiff also had documented memory deficits (including an inability to remember the assault) until at least December 24, 2012 and continues to have memory problems (T. 50-51, 54). Finally, the Plaintiff was being treated for injuries until March, 2013, a 6 month period that is a "long convalescence" (T. 53-54).

In reviewing Plaintiff's grievance, Sarah Johnson, the Chairperson of the ARB, testified that she did not consult with anyone regarding the merits of the April 30, 2012 grievance (T. 64). She only reviewed the Cumulative Counseling Summary (regarding the merits) (T. 70). Ms. Johnson also testified that she assumed Plaintiff discovered the basis of his grievance two months after the end of October (i.e. the end of December) (T. 67, 73). Ms. Johnson based her timeliness decision on the Cumulative Counseling Summary which indicated that a grievance was filed on January 4, 2013 (T. 73-74).

The Court finds that Plaintiff suffered serious and debilitating injuries when he was assaulted on October 5, 2012. The injuries required extensive and invasive medical procedures, an extended stay at the hospital, and significant post-hospital medical care. Plaintiff was not physically healed from his attack until 6 months later. The Court further finds that the mental injuries that Plaintiff suffered were also significant and on-going. The Court finds Plaintiff credible in his testimony that he had limited memory of the events surrounding his attack and that when his memory did return, it was not whole. While Plaintiff was apparently able to grieve his concerns about personal property and was able to articulate that he was assaulted and

suffered injuries in December 2012/January 2013, such evidence does not establish that he was able to recall that he sought help prior to the assault and that he was able to remember that there were officers on duty who could have helped him. The Court further finds that in rejecting Plaintiff's grievance as untimely, the ARB conducted no investigation of Plaintiff's medical condition (which he highlighted in his April 30, 2013 grievance) to determine if it would have had an effect on his ability to timely file a grievance. Rather, the ARB merely speculated that because he was able to file a grievance in January, 2013 about property, he was likewise able to recall and file a grievance as to the assault itself. In sum, this Court finds Plaintiff credible in his assertion that he submitted the April 30, 2013 grievance as soon as he was able.

## CONCLUSIONS OF LAW

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated

that summary judgment is "the put up or shut up moment in a lawsuit," when a party must show what evidence it has that would convince a trier of fact to accept its version of the events. *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

> The Prison Litigation Reform Act provides:
>
> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies. *Id.* 544 F.3d at 742. If a Plaintiff has exhausted his remedies, the case will proceed on the merits. If, however, a Plaintiff has not exhausted, the Court may either

allow Plaintiff to exhaust or terminate the matter.

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor. ILL. ADMIN. CODE TIT. 20, § 504.810(a). If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id.* §504.810(b). The grievance officer is required to advise the Chief Administrative Officer ("CAO" – usually the Warden) at the facility in writing of the findings on the grievance. *Id.* § 504.830(d). The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. *Id.* § 504.830(d). An inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board for a final decision. *Id.*, § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id.* §504.840.

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner,

he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

The Seventh Circuit Court of Appeals recently has found that "[a] *Pavey* hearing serves a limited but important role: it helps the judge decide whether the court or the prison is the proper forum for the prisoner's grievance," prior to "adjudication on the merits." *Wagoner v. Lemmon*, 778 F.3d 586, (7th Cir. 2015). The sequence the Seventh Circuit has developed when failure to exhaust has been raised as an affirmative defense is:

> "(1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion [the judge] deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; or (b) although he has no unexhausted administrative remedies, the failure to exhaust was innocent…; or (c) the failure to exhaust was the prisoner's fault, in which even the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery…"

*Pavey*, 544 F.3d at 742. Thus, the actual merits of the claims giving rise to the suit are not presented: the focus is on whether a prisoner exhausted the administrative remedies available to him. *Id*. *But see Fluker v. County of Kankakee*, 741 F.3d 787, 792-793 (7th Cir. 2013) (noting that no case or statute "prohibits a district court's progression from the PLRA defense to the merits if the situation properly calls for it"). Enforcement of the exhaustion requirement is accomplished by dismissal of the suit, without prejudice. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir 2004).

Submission of the grievance to the ARB was sufficient because Plaintiff was grieving

events that did not occur in the prison in which he was currently housed. In the grievance, Plaintiff states that "Because the staff failed to protect me. I almost died. I was left for dead on yard." This statement was sufficient to place the prison on notice that Plaintiff was complaining about the staff failing to protect him when he was "jumped by a couple of guys on the yard."

Plaintiff's failure to name a particular Defendant also is not fatal to a claim. The Illinois Administrative Code provides that "[t]he grievance shall contain factual detail regarding each aspect of the offender's complaint . . . and the name of the person who is the subject of or otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of the individuals are not known, but the offender must include as much descriptive information about the individual as possible." *Id.* TIT. 20, § 504.810(a). The August 23, 2010 grievance did not name any person nor did Plaintiff provide a physical description of the persons involved. The grievance form itself, however, does not direct an inmate to name a particular person. In *Maddox v. Love*, 655 F.3d 709, (7th Cir. 2011), the Seventh Circuit addressed a similar circumstance: the defendants argued a grievance filed was insufficient because it failed to name or describe the wrongdoers. The Seventh Circuit rejected the argument, finding that the grievance form only asked for a brief description, the prison responded to the grievance on the merits, and the grievance sufficiently notified the prison of the complaint. *Id.* at 722-721. In particular, the Court stated that the failure to name a defendant "was a mere technical defect that had no effect on the process and didn't limit the usefulness of the exhaustion requirement." *Id.* at 722.

In this case, and in light of Plaintiff's mental deficits, Plaintiff provided as much detail "as possible." A simple investigation of the October 5, 2012 would have readily supplied the names of the prison guards on duty and may have yielded information Plaintiff's claim that he

sought help from Defendants Mayo, Casper, and Atchison. The Court is mindful that the grievance, as it relates to staff conduct, is limited to one sentence – that sentence was sufficient to place the prison on notice of the claim that Plaintiff was complaining of a failure to protect related to the October 5, 2012 assault.

In addition, the grievance was timely. Illinois' Administrative Code provides that a grievance shall be filed within 60 days "after the discovery of the incident, occurrence, or problem that gives rise to the grievance." *Id.* TIT. 20, § 504.810(a). In this case, the occurrence is not the assault itself – Plaintiff was not grieving the fact that he was assaulted. The occurrence or problem was the correctional officers' failure to protect him. Plaintiff did not discover this problem within 60 days of the October 5, 2012 assault and certainly not within 60 days of returning to the Menard after his 3 week hospital stay. While Plaintiff may have discovered the absence of physical property, his watch and wedding band, in December 2012/January 2013, he did not "discover" the actions of the correctional officers until he regained his memory. As indicated above, this Court finds credible Plaintiff's testimony that he prepared and filed the April 30, 2013 grievance as soon as possible and consistent with the Administrative Code.[1]

---

[1] This Court would also add that by unilaterally rejecting Plaintiff's grievance as untimely, the ARB did not give the Plaintiff an opportunity to "demonstrate that a grievance was not timely filed for good cause." ILL. ADMIN. CODE TIT. 20, § 504.810(a). There is nothing in the Code that would require an inmate to affirmatively plead good cause in a grievance that appears to be untimely.

## RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that the Motion for Summary Judgment on the Issue of Exhaustion filed by Defendants on February 6, 2015 (Doc. 55) be **DENIED** and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: September 2, 2015**

                                               **DONALD G. WILKERSON**
                                               **United States Magistrate Judge**