IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KIRK HORSHAW, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-CV-0248-NJR-DGW |
| | ) |
| SGT. CASPER, MICHAEL ATCHISON, | ) |
| MORGAN TEAS, and EDDIE RUMPH, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Pending before the Court is a Motion for Summary Judgment filed by Defendants Mark Casper,[1] Michael Atchison, Morgan Teas, Eddie Rumph, and Lt. Mayo[2] on February 26, 2016 (Doc. 78). For the reasons set forth below, the motion is granted.

### INTRODUCTION

Plaintiff Kirk Horshaw's Amended Complaint, filed on November 17, 2014 (Doc. 34), alleges that his civil rights were violated while he was incarcerated at Menard Correctional Center ("Menard") when Defendants Casper, Atchison, Teas, and Rumph failed to protect him from an attack by a fellow inmate on October 5, 2012. Horshaw alleges that, in September or October 2012, he verbally—and in writing—informed Atchison and Casper that he had received a threatening note stating that he would be

---

[1] The Clerk's Office is **DIRECTED** to update the docket sheet to reflect the true and accurate name of this defendant: "Sgt. Casper" should be "Mark Casper."
[2] Lt. Mayo previously joined in on the Motion for Summary Judgment, but Horshaw subsequently filed an unopposed motion to voluntarily dismiss Lt. Mayo without prejudice, which the Court granted on June 6, 2016 (*See* Doc. 85).

Page 1 of 15

attacked and beaten for "disrespecting" another Menard inmate. Horshaw alleges that Casper indicated that he would check into it.

On October 5, 2012, Horshaw nonetheless was attacked in the east yard and beaten by other inmates with their fists, a blunt object/dumbbell weight, and/or their boots. At the time, Teas and Rumph were on yard duty, and Horshaw alleges that these defendants failed to protect him by failing to timely respond to the attack. Horshaw claims that he was knocked unconscious and that he suffered substantial injuries including a severe brain injury, bone fractures, lost teeth, and vision damage. Horshaw has also suffered physical and mental disabilities, pain and suffering, painful and invasive surgical and other medical procedures (including a resulting collapsed left lung and complications from medical procedures), and memory loss. Horshaw is proceeding on one count of failure to protect against all four remaining defendants.

Defendants seek summary judgment on Horshaw's claim, arguing that they had no actual knowledge of the threat to Horshaw's safety and that they were not deliberately indifferent to a risk to his safety (Doc. 78). Horshaw filed a response to the motion on March 31, 2016 (Doc. 82).

## BACKGROUND

It is undisputed that, on October 5, 2012, Horshaw was attacked and injured by inmate Lorenzo White and another inmate, while Horshaw was on the yard at Menard (Doc. 82-2). The assault occurred at the behest of inmate Corrie Wallace, who is a leader of the Gangster Disciples, a prison gang, whom Horshaw had allegedly "disrespected" (*Id*.). At the time, Rumph, a correctional officer, was 100 yards away in Guard Tower 6 of

the east yard at Menard, and Teas, also a correctional officer, was located in Guard Tower 5, a shorter distance away.

The dispute in this matter centers on who knew what and when they knew it. Prior to the attack, in September 2012, Horshaw received a note, from an unknown person, which stated that Horshaw would be "eradicated for disrespecting a gang member" and that he would be beaten (Kirk Horshaw Deposition, p. 16; Doc. 79-1, p. 16[3]).[4] After Horshaw received the threatening note, he informed Casper and a lieutenant in the cell house of the note (*Id*. at 16-17) and gave Casper a note that he had written himself describing the threatening note (*Id*. at 23-24). Casper told Horshaw that he would check into it (*Id*.). When Casper and the lieutenant did not get back to him, Horshaw wrote a letter to Atchison, the warden at that time (*Id*. at 18). In the letter, Horshaw told Atchison about the threatening note from a "high-ranking gang member." (*Id*. at 19-21). Horshaw explained that he needed help and that he wanted to be transferred out of his cell house (*Id*.). Horshaw placed the note in the bars of his cell, to be collected during nightly mail pick-up at 10:00 p.m. (*Id*. at 20). The note was in a white envelope with Atchison's name on it (*Id*.). Horshaw observed a correctional officer collect the letter (*Id*.).

Atchison testified that he did not receive any letters or notes from Horshaw prior to the attack (Michael Atchison Deposition, Doc. 79-5, p. 49). Atchison recalls speaking to Horshaw after the attack, however, and receiving a letter from Horshaw dated December 28, 2012 (*Id*. at 50-51). Prison records corroborate Atchison's testimony (Docs.

---

[3] Page designations refer to the number generated by CM/ECF and not the page designations of the depositions themselves.
[4] The record does not contain the actual note or any of the other letters and notes described by Horshaw.

79-6, 79-7).

Casper, who worked in the cell house where Horshaw was housed, also testified that Horshaw never passed him a note or told him that he received threats during the relevant time period (Mark Casper Dep., Doc. 79-11, pp. 11, 13, 16-17). Casper also testified that, while he is sure that Horshaw did not pass him a note regarding a threat, of the sixty or seventy notes he has received in general, he does not remember each and every inmate who gave them to him (*Id*. at 32-33).

The attack occurred on October 5, 2012. Horshaw does not remember getting attacked, who attacked him, or why he was attacked (*Id*. at 32-33). Horshaw remembers that Teas was a tower guard on the day of the attack, but Horshaw has no other familiarity with her and had no previous interaction with her (*Id*. at 22-23). Horshaw also has no personal knowledge of Rumph's actions or inactions on the day of the attack, and he had no previous interaction with him (*Id*. at 30-31).

Rumph, who was in Tower 6 in the east yard (Eddie Rumph Dep., Doc. 79-9, pp. 8-9), testified that he did not see the attack because he was not looking at the area of the attack, but rather at the inmates using the telephone 100 yards away (*Id*. at 13). He did indicate, however, that it was possible to see both the area of the attack and the phones at the same time (*Id*.). He further indicated that he and Teas were primarily responsible for monitoring the inmates in the east yard where the attack occurred, and there were no correctional officers on the ground (*Id*. at 14). He learned of the attack when he heard Teas report the attack over the radio (*Id*. at 20). At that point, he looked for the scene of the altercation and observed Horshaw lying on the ground (*Id*. at 22). Rumph stayed in

the guard tower and observed another correctional officer tend to Horshaw shortly after the attack (*Id*. at 26). Rumph stayed in the guard tower in order to maintain "a weapon at the window," to monitor the staff on the yard, and to help "keep the inmates that were on the ground lying on the ground" (*Id*.).

Teas did observe the attack (Morgan Teas Dep., Doc. 79-10, p. 10). At the time, she was stationed in Tower 5 and also was responsible for monitoring the east yard (*Id*. at 11). Tower 5 is a three or four story building with a locked door and a 360 degree view (*Id*. at 11-12). The tower is located about 30 yards from where Horshaw was attacked (*Id*. at 17). Teas was the closest officer to the scene (*Id*.). While she did not see the first punch, Teas observed Horshaw on the ground and being attacked by inmate White (*Id*. at 29). She ordered inmate White to stop hitting Horshaw and to get on the ground (*Id*. at 30). She then chambered a round into her shotgun, at which point inmate White got up and ran to the multipurpose building (*Id*. at 30-31).[5] She contacted her supervisor and informed him of the situation (*Id*. at 39) and then ordered the other inmates in the area to get on the ground (*Id*. at 56). At no point during or immediately after the attack did Teas leave the tower or fire a warning shot (*Id*. at 39-40, 45).

In sum, Horshaw testified that he spoke to and gave a note to Casper, and he wrote a letter to Atchison, describing the threatening note and asking for help a few days or weeks prior to the attack. Neither defendant acknowledges speaking to Horshaw or receiving correspondence from him prior to the attack. Rumph did not observe the

---

[5] During the deposition of each defendant, a video was played that showed the attack. From the testimony, the one-minute video shows Horshaw and inmate White circling each other for about 28 seconds; Horshaw then turns to walk away, and inmate White strikes Horshaw and causes him to fall to the ground. Inmate White then straddles Horshaw and hits him many times with his fists. Another inmate then joins in and hits Horshaw and then walks away. Inmate White then stands up and stomps on Horshaw's head and walks away. The entire beating lasts approximately 17 seconds (Doc. 79-5, p. 22).

attack, even though he could have observed it from where he was positioned, and he only became aware of it after the beating had stopped. Teas saw the attack, yelled for the attack to stop, chambered a round in her shotgun, and radioed her supervisor, but otherwise took no further action in response.

## LEGAL STANDARD

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir.

2005) (other citations omitted)).

Prison officials have a duty under the Eighth Amendment "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

To succeed on a failure to protect claim, an inmate must first objectively demonstrate that he is "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. A beating of one inmate by another "clearly constitutes serious harm." *Brown v. Budz*, 398 F.3d 904, 910 (7th Cir. 2005). Second, he must show that prison officials acted with deliberate indifference to that risk, a subjective inquiry into a prison official's state of mind. *Farmer*, 511 U.S. at 838-39.

As explained in *Farmer*, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prisoner must demonstrate that prison officials were aware of a specific, impending and substantial threat to his safety, often "by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (quoting *McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir. 1991)).

A prison official may be held liable only if he knows an inmate faces a substantial

risk of serious harm and "disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. An official who knows of a substantial risk of serious harm is free from liability, however, if he or she "responded to the situation in a reasonable manner." *Fisher v. Lovejoy*, 414 F.3d 659, 664 (7th Cir. 2005). A showing of negligence, or even gross negligence, is insufficient to prove an official acted with deliberate indifference. The standard is the "equivalent of criminal recklessness." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008) (quoting *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006)).

### ANALYSIS

*Atchison*

Defendant Atchison is entitled to summary judgment because there is no evidence that he was aware of the risk to Horshaw and disregarded that risk. The undisputed evidence reveals that Atchison did not receive, read, or know of the note penned by Horshaw explaining the threatening note he received and requesting assistance. Horshaw attempts to controvert this fact through circumstantial evidence. Horshaw points out that Atchison received a letter from Horshaw on December 28, 2012, which Atchison did not initially remember receiving (Doc. 79-4, pp. 50, 52-53). But this does not mean that Atchison received a letter from Horshaw prior to the attack that he does not remember receiving. This argument is based on speculation and not on any evidence. In fact, there is no indication in the correspondence log that such a letter was received.

Horshaw further argues that Atchison should have known of the specific threat to his safety because he was aware of Horshaw's "Keep Separate From" list ("KSF list"),

and he was generally aware of violence in the prison. Neither of these arguments is convincing. Prisons are dangerous places that contain dangerous people. *See Grieveson*, 538 F.3d at 776-77 ("[P]risons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more."). That Atchison may have been aware that certain individuals were on Horshaw's KSF list[6] or that he was generally aware of prison gangs and the violence they engendered at Menard, does not establish that Atchison should have been aware of a *specific* threat to Horshaw's safety.

In *Farmer*, the Supreme Court stated as follows:

> Nor may a prison official escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault. . . If, for example, prison officials were aware that inmate rape was so common and uncontrolled that some potential victims dared not sleep but instead would leave their beds and spend the night clinging to the bars nearest the guards' station, it would obviously be irrelevant to liability that the officials could not guess beforehand precisely who would attack whom.

*Id*. 511 U.S. 843-44 (internal editing, quotation, and citations omitted).

Horshaw argues that Atchison was aware of prison gang activity and that it was pervasive, which leads to the inference that Atchison was deliberately indifferent to Horshaw's safety. Horshaw points to Teas's deposition in which she indicated that she had knowledge of gang activity and that she has general information because they are "prevalent," but that she does not have specific knowledge of individual members (Doc.

---

[6] The Court also notes that, while Corrie Wallace was a known enemy of Horshaw's as of March 22, 2013 (several months after the attack), Lorenzo White was not listed as a known enemy, and there is no evidence of whether the other inmate who attacked Horshaw was listed as a known enemy (Doc. 82-1). Further, Horshaw's known enemy list as of August 8, 2012 (a few months prior to the attack) did not include Corrie Wallace or Lorenzo White.

79-10, p.p. 58-59). Atchison further testified that there is "always gang activity" and that it is "investigated continuously in the prison system" (Doc. 79-5, p. 40). When Atchison was warden, he also was aware of inmates who were considered the most dangerous, and he received monthly briefings on gang activity in the prison (*Id*. at 42-43).

While there is evidence that gang activity was prevalent at Menard, there is no evidence that Horshaw was at a particular risk of being attacked by prison gangs (particularly the Gangster Disciples) and that Atchison was aware of that risk. *See Morris v. Ley*, 331 F. App'x 417, 419 (7th Cir. 2009) ("… a general risk of violence is not enough, for prisons are inherently dangerous places . . . [i]nstead, [the plaintiff] must show a tangible threat to his safety or well-being"). That is, there is no evidence that Atchison knew that Horshaw was formerly a gang member who would have to suffer a beating in order to leave the gang. Nor is there any evidence that Atchison was particularly aware of the significant and immediate threat that all inmates were exposed to by the Gangster Disciples at the time of the attack or that he was aware the attackers were members of that gang.

Horshaw cites to *Mayfield v. Reeder*, Case No. 3:12-cv-1291-DGW, 2014 WL 5023288 (S.D. Ill. 2014), in which the Court found that evidence that the plaintiff had sent letters regarding a threat that the defendant did not acknowledge receiving, precluded summary judgment. *Id*. at *3. An additional fact in that case, however, was that the defendant made a gesture to the plaintiff that could have indicated that he did receive the letters detailing the threat to his safety. *Id*. Similarly, in *Gidarisingh v. Pollard*, 571 F. App'x 467, 470 (7th Cir. 2014), there was evidence that the defendant acknowledged

receipt of the letter detailing the threat to the plaintiff. In this case, there is no evidence of any acknowledgement by Atchison.

*Casper*

When the evidence is viewed in the light most favorable to Horshaw, it reveals that Horshaw told Defendant Casper, verbally and in writing, that he received a note saying that he was going to be "eradicated" and beaten for disrespecting a gang member and that he took the threat seriously. Thus, at this stage, the Court must accept that Horshaw complained to Casper of a threat to his safety and that Casper assured Horshaw that he would check into it.

Defendants argue, however, that Horshaw did not provide information of a *specific* threat to his safety. They note that Horshaw did not indicate who was going to attack him, when he would be attacked, in what manner he would be attacked, which gang was involved, who gave him the note, or any other information to substantiate the threat. "Complaints that convey only a generalized, vague, or stale concern about one's safety typically will not support an inference that a prison official had actual knowledge that the prisoner was in danger." *Gevas v. McLaughlin*, 798 F.3d 475, 480-481 (7th Cir. 2016). Generally, statements that do not identify the person making the threat or the nature of the threats are insufficient. *Compare Klebanowski v. Sheahan*, 540 F.3d 633, 639 (7th Cir. 2008) (finding that statements that an inmate "was afraid for his life" and wanted a transfer coupled with knowledge of a previous beating are insufficient to give correctional officers notice of a specific threat), *and Butera v. Cottey*, 285 F.3d 601, 606 (7th Cir. 2002) (finding that statements that the plaintiff "'was having problems in the block'

and 'needed to be removed' were insufficient to give the Sheriff notice of a specific threat"), *and Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997) (finding that the plaintiff could not prevail on a failure to protect claim because he "did not demonstrate that the defendants had specific knowledge of a threat to [ ] [him] by the inmates who assaulted him"), *with Gevas*, 798 F.3d 481 (where inmate complained that his cellmate had threatened to stab him), *and Haley v. Gross*, 86 F.3d 630, 643 (7th Cir. 1996) (where inmate advised that his cellmate was "intimidating him, acting strangely, and had threatened [ ] [him] that 'something crucial was going to happen' if one of them wasn't moved"); *See also Whaley v. Erickson*, 339 F. App'x 619, 622 (7th Cir. 2009) ("We have found a substantial risk of serious harm where custodians know of threats to specific prisoners posed by a specific source, or place prisoners in the same cell as an inmate known to have violent propensities.").

Horshaw generally informed Casper that gang members threatened to eradicate him and beat him because he had "disrespected" a gang member. There is no evidence that Horshaw offered any context or time frame for either his alleged action (*e.g.* who he was accused of disrespecting or when it occurred) or the threat Horshaw received. There is no evidence that Horshaw identified to Casper which gang the note was talking about, who handed him the note, or which specific person or group he feared. Thus, Horshaw did not provide sufficient detail to make Casper aware of a specific threat to his safety. Perhaps after receiving the information, Casper could have asked questions and elicited more detail. Given the non-specific nature of the threat, however, such a failure could only be considered negligence and not deliberate indifference.

*Teas and Rumph*

Horshaw claims that Teas and Rumph should have observed the attack and should have done more to protect Horshaw during the attack. Horshaw argues that Rumph should have observed the altercation because it was "possible" and that Teas should have used up to deadly force to stop the attack.

"The test of deliberate indifference ensures that the mere failure of the prison official to choose the best course of action does not amount to a constitutional violation." *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002) (citing *Farmer*, 511 U.S. at 844). Perhaps the best course of action, as Horshaw suggests, would have been for Rumph to continuously scan the yard instead of focusing his attention on one particular area at any given time. Perhaps also, the best course of action for Teas would have been to fire a warning shot to scare off Horshaw's attackers (although that also comes with inherent risks). The Eighth Amendment, however, does not require such vigilance or such potentially deadly action.

Without evidence that Rumph had actual knowledge of the attack while it was occurring, a reasonable jury could not determine that Rumph consciously disregarded a risk to Horshaw's safety. As to Teas, the evidence shows that she took action to stop the beating (which lasted approximately 17 seconds) within seconds of first noticing it. It is regrettable that Horshaw suffered a savage beating at the hands of another inmate. Such incidents should not occur in a civilized society. When viewing the evidence in the light most favorable to Horshaw, however, a reasonable jury could not find that Rumph and Teas were deliberately indifferent to Horshaw's safety.

*Qualified Immunity*

Horshaw is correct in noting that this defense was raised after the deadline set in the Scheduling Order. Because of the necessity of factual development to raise such a defense, however, the Court will consider the argument. In determining whether Defendants are entitled to qualified immunity, the Court must consider two questions: The first question is: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *see also Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012). The second question is: was the right "clearly established?" *Id*. Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Estate of Escobedo v. Martin*, 702 F.3d 388, 404 (7th Cir. 2012) (quotation marks and citations omitted). "If officers of reasonable competence could disagree on this issue, immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Based on the foregoing, the facts do not show that Defendants violated a constitutional right. As such, Defendants are entitled to qualified immunity.

*Policy or Practice Claim*

Finally, Horshaw appears to allege that a policy or practice lead to constitutional violations.[7] *See Monell v. Dep't of Social Serv. of N.Y.C.*, 436 U.S. 658 (1978). He specifically alleges that "security was lacking during relevant times at issue," and that, in particular, there were no security personnel on the yard. To support this claim, Horshaw relies on the testimony of Rumph who indicated:

---

[7] The screening Order (Doc. 4) did not indicate that such a claim would proceed in this matter although Horshaw may have alleged this claim in his Amended Complaint (Doc. 34, ¶ 73).

Q: At the time of the attack, was there an adequate amount of security in the east yard?

A: I don't know, we've always been short staffed, you know, but that's not for me to say, I don't know, I don't know.

(Doc. 79-9, p. 16).

Horshaw also relies on the fact that there is "always gang activity" at Menard (Doc. 79-5, p. 40). Presumably, the policy that Horshaw complains of is short-staffing, or not having enough people on the yard who could have intervened in the attack, and that this violated Horshaw's constitutional rights. But the evidence does not support such a conclusion. Horshaw indicates that an advisory board may have questioned the violence that occurs at Menard; however, Horshaw provides no evidence to support the conclusion that Menard's staffing policies were the moving force behind any unconstitutional condition of confinement. As such, Horshaw cannot prevail on a policy or practice claim.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. 78). The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:   September 27, 2016

s/ Nancy J. Rosenstengel_____
**NANCY J. ROSENSTENGEL
United States District Judge**
